UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

U.S.A. United Fleet, Inc., U.S.A. United Bus Express, Inc.,
U.S.A. United Transit, Inc., and United Tom Tom
Transportation, Inc.,

                    Plaintiffs,

   -against-

Local 1181-1061, Amalgamated Transit Union, AFL-CIO,
a labor organization, Salvatore Battaglia, Individually and
as President thereof, John Doe and Richard Doe, et als.,
being fictitious, true names being unknown to plaintiffs and
parties being connected with or affiliated with or acting in
concert with the aforesaid defendants.

                    Defendants.

-------------------------------------------------------------- X

05 CV 5901 (ARR)

<u>NOT FOR
PUBLICATION</u>

<u>OPINION AND ORDER</u>

ROSS, United States District Judge:

       On December 16, 2005, plaintiffs filed a complaint alleging that Local 1181-1061 Amalgamated Transit Union and its officers and agents (collectively "defendants") are threatening a strike or work stoppage on Monday, December 19, 2005. Plaintiffs, companies engaged in the business of transporting disabled children to and from school pursuant to a contract with the New York City Department of Education, seek a temporary restraining order which would restrain and enjoin defendants from engaging in, ordering, authorizing, permitting, or inducing a work stoppage or strike pending further determination of this action.

       For the following reasons, the court grants plaintiff's request for a temporary restraining order unless and until the defendants present to this court an evidentiary and legal basis to conclude that the exception to the no-strike provision in the collective bargaining agreement

1

Dockets.Justia.com

between the parties has been triggered in this case, and until the further order of this court.

## BACKGROUND

Plaintiffs submitted their complaint, request for temporary restraining order, and a memorandum of law and affidavits supporting their request late in the day on Friday, December 16, 2005. Plaintiffs affirm that defendants were given ample notice of this action; plaintiff's attorney affirms that he spoke with defendants' attorney at 1pm to inform him of his intent to file for a temporary restraining order and preliminary injunction. However, defendants have neither communicated with nor submitted any documents, affidavits, or other materials to the court. The court has tried repeatedly to contact defendants and their attorney to request that they respond to plaintiff's allegations; defendants and their attorney have not responded to the court's repeated calls and messages. Therefore, the following summary is based on the materials presented by the plaintiffs.

### A. The Collective Bargaining Agreement

Plaintiff companies employ members of the defendant union. Plaintiff companies and defendant Local 1181-1061, Amalgamated Transit Union, AFL-CIO entered into a collective bargaining agreement which is effective from July 1, 2002 to June 30, 2006. This collective bargaining agreement contains a mandatory grievance arbitration clause which provides in pertinent part that:

> the Employer agrees to meet with the duly accredited officers and committees of the Union to negotiate all questions in connection with this agreement arising between them... Should any difference arise between them which cannot be mutually adjusted, it shall be submitted for decision at the request of either part to the Impartial Arbitrators... The decision of the arbitrator shall be final and binding on both parties.

Collective Bargaining Agreement, Section IV, <u>submitted as</u> Affidavit of Laraine Lia Castellano in support of Temporary Restraining Order (hereinafter "Castellano Affidavit"), Ex. A.

The collective bargaining agreement also contains a "no-strike" clause, which provides that:

> [D]uring the term of this agreement the Union will not declare a strike or cause disruption of service, nor will the Employer lock out any of its employees except as provided under this Agreement. Should the Employer fail to make welfare or pension contributions or pay wages, this Section shall be deemed waived provided that the Union or Fund gives the Employer ten (10) business days notice on welfare and pension (but not on wages) to cure the delinquency.

<u>Id.</u> Section III.

**B. The Current Dispute**

For the last several months, plaintiffs and defendants have been engaged in a dispute regarding matters including, but not limited to, the companies' contributions to welfare and pension funds for new hires and the union's attachment of the companies' Department of Education service checks. Verified Complaint ¶13-14.

On December 2, 2005, defendants notified plaintiffs that "the Union and Local 1181 Funds herewith provide ten (10) business days notice that the provision[s] of Section III are deemed waived for your failure to pay Welfare and Pension contributions." Letter from Ronald A. Straci to USA United Fleet Inc., Dec. 2, 2005, *submitted as* Castellano Affidavit, Ex. B. On December 5, 2005, plaintiffs notified the union that the aforementioned "strike notice" was invalid, premature, and insufficient. Verified Complaint ¶ 28. On December 12, 2005, plaintiffs' representatives met with union representatives to review the union's claims of deficiencies. <u>Id.</u> at ¶ 30. During this meeting, the union agreed to provide plaintiffs with information regarding the alleged deficient contributions; as of this date, no such information has

3

been provided. Id. at ¶ 31.

On December 14, 2005, plaintiffs' counsel sent a letter to defendants' counsel to confirm the union's agreement to withdraw its strike threat. Id. at ¶ 32. Defendants' counsel denied the existence of such an agreement. Id. On Thursday, December 15, 2005, defendants' counsel told plaintiffs' counsel that he would talk with the union about withdrawing the strike threat and notify plaintiffs' counsel by the end of the day. Id. Despite plaintiffs' counsel's repeated attempts to contact defendants' counsel, plaintiffs' counsel has not received assurance that the strike will not occur. Id. Before 9am on Friday, December 16, 2005, plaintiffs' counsel notified defendants' counsel that, unless the union agreed not to strike on Monday, December 19, 2005, plaintiffs would seek an injunction to prevent such a strike. Id. ¶ 46. At approximately 1pm on Friday, December 16, 2005, plaintiffs' counsel spoke with defendants' counsel and notified him that plaintiffs would seek an injunction in the District Court for the Eastern District of New York. Id.

## DISCUSSION

### A. Jurisdiction

This court may exercise its jurisdiction over plaintiff's complaint pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended by 29 U.S.C. 185(a), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101 et seq., however, restrict the

jurisdiction of this court to issue injunctions in labor disputes. In Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970), the Supreme Court created an exception to this prohibition against labor injunctions for the purpose of accommodating federal policy in favor of arbitration of labor disputes. Under this narrow exception, the district court has jurisdiction to grant injunctive relief when it finds that (1) the union has an affirmative duty not to strike (e.g., "no strike" clause) and (2) the strike "is over a grievance which both parties are contractually bound to arbitrate." Boys Markets, 398 U.S. at 254.

The Supreme Court has since clarified that the dispute underlying the strike, not the legality of the strike itself, must be arbitrable for the Boys Markets exception to apply. See Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397, 407-409 (holding that the court lacked jurisdiction to grant injunctive relief because the strike was a sympathy strike not caused by a dispute "even remotely subject to the arbitration provisions of the contract"); see also Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Assoc., 457 U.S. 702 (1982). Similarly, the Boys Markets exception does not apply where the collective bargaining agreement contains "neither a generally applicable arbitration clause nor a broad no-strike provision." Standard Food Products Corp. v. Brandenburg, 436 F.2d 964, 965 (2d Cir. 1970). As the Second Circuit has emphasized, "[w]here the collective agreement ... excepts from the requirement of arbitration certain types of contract violations and provides that the union retains the right to strike with respect to such violations, no injunction can issue against a strike where the union presents a colorable claim that such violations have occurred." Id. at 965 (emphasis added).

Here, the undisputed record establishes that the Boys Markets exception applies and the court, therefore, has jurisdiction to grant injunctive relief. Similar to Boys Markets, the

5

agreement has a generally applicable arbitration clause, involving "all questions in connection with th[e] Agreement." Castellano Affidavit, Ex. A, Section III. In addition, the parties' collective bargaining agreement contains a broad "no-strike" provision, which specifically states that "the Union will not declare a strike or cause disruption." Id. The agreement, however, includes an exception to the "no-strike" provision "[s]hould the Employer fail to make welfare or pension contributions or pay wages." Id. According to plaintiffs, defendants have threatened to strike due to plaintiffs' alleged failure to submit payments to certain health and pension funds. Verified Complaint § 27. Defendants, however, have failed to submit any responsive papers in relation to this case. Thus, defendants have failed to present any evidence that plaintiffs have violated the provision that is specifically excepted from the "no-strike" clause. In contrast, plaintiffs have adduced evidence they have attempted to pay the amounts owed to the health and pension funds at issue. Specifically, plaintiffs indicate that defendants attached $940,075.60 in funds, which the Department of Education is currently holding, and that they have authorized the Department of Education to release the amount due. Castello Affidavit ¶¶ 11, 21. Thus, the record establishes—and defendants have presented no evidence to the contrary—that plaintiffs have not violated the only provision excepted from the broad "no-strike" provision.

Given that defendants have made no "colorable claim" that plaintiffs have violated the only provision excepted from the "no-strike" provision, the court must conclude that the potential strike relates to grievances subject to the agreement's general arbitration provision. Therefore, the court may exercise its jurisdiction to issue injunctive relief pursuant to Boys Markets and Section 301(a) of the Labor Management Relations Act.

**B. Injunctive Relief**

Finally, the court must consider whether traditional criteria for granting injunctive relief are satisfied. To obtain a preliminary injunction, the moving party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999). The standards which govern consideration of an application for a temporary restraining order are the same as the standards which govern a preliminary injunction. Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992).

Absent injunctive relief, plaintiff companies, the Department of Education, and the schoolchildren served by plaintiff companies will suffer irreparable harm. Plaintiff companies will suffer loss of goodwill with both the public and the Department of Education, will risk losing their contracts with the Department of Education, and might conceivably be bankrupted as a result. Verified Complaint ¶ 48-50. The Department of Education will not be able to perform its duty to provide transportation for handicapped children within its jurisdiction. Perhaps most importantly, more than four thousand handicapped children will be left without transportation to school on Monday; they will be deprived of the opportunity to attend classes and, because they will not receive any advance notice of the strike, they may not have a safe alternative place to stay during the day. Although it is difficult to make an informed decision about the likelihood of success on the merits without any response whatsoever from defendants, there are significantly serious questions about the merits of this case to make it a fair ground for litigation, especially given the overwhelmingly strong balance of hardships in favor of the plaintiffs and the public

interest. A temporary restraining order is therefore appropriate in this case.

## CONCLUSION

For the foregoing reasons, the application for a temporary restraining order is granted upon the terms and conditions set forth in the order to which this opinion is annexed.

SO ORDERED.

Allyne R. Ross<br>
United States District Judge

Dated: December 17, 2005
      Brooklyn, New York

8